COOK v CITY OF DETROIT

Docket No. 59743. Submitted November 8, 1982, at Detroit.—Decided May 17, 1983.

Alice Cook, as administratrix of the estate of Glover Cook, filed suit against the City of Detroit and Detroit police officers James Duff, Gloria Gaines and Alvin Samuel in Wayne Circuit Court alleging negligence and a violation of the federal statute governing civil actions for deprivation of rights in connection with Glover Cook's death, which occurred after he was subdued and transported by the defendant police officers to Detroit General Hospital. The court, John M. Wise, J., granted summary judgment in favor of the City of Detroit on the ground that plaintiff did not state an actionable claim under the federal civil rights statute. Defendant James Duff was voluntarily dismissed from the suit on motion of the plaintiff, and the jury reached a verdict of no cause of action in favor of Gloria Gaines and Alvin Samuel. Plaintiff appeals. *Held:*

1. Plaintiff's civil rights claim against the City of Detroit was improperly dismissed. Plaintiff alleged that the City of Detroit wilfully failed to properly select, train, and supervise its police officers. That is a claim upon which relief can be granted. The grant of summary judgment as to this claim is reversed, plaintiff's civil rights claim against the City of Detroit is reinstated, and the case is remanded for a trial on the merits of the civil rights claim.

2. The trial court did not err in granting summary judgment

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 876 *et seq.*
[2] 20 Am Jur 2d, Courts § 230.
[3] 15 Am Jur 2d, Civil Rights §§ 17, 26, 268, 269.
  57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 88, 97, 247.
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 250.
[5] 15 Am Jur 2d, Civil Rights §§ 268, 269.
  57 Am Jur 2d, Municipal, School, and State Tort Liability § 243 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error §§ 843, 884.
  31 Am Jur 2d, Expert and Opinion Evidence § 3.
[7] 31 Am Jur 2d, Expert and Opinion §§ 16-18, 26-32, 36-38.
[8] 5 Am Jur 2d, Appeal and Error §§ 644, 896.

in favor of the City of Detroit on the grounds of governmental immunity. The trial court's grant of summary judgment in favor of the City of Detroit on this issue is affirmed.

3. Plaintiff's contention that the City of Detroit may be held liable under a theory of *respondeat superior* need not be resolved since a decision on plaintiff's remaining issues render a decision of this issue unnecessary. Plaintiff's arguments in support of overturning the jury's verdict in favor of Gaines and Samuel are without merit. Since the jury found that neither Gaines nor Samuel was negligent, collateral estoppel bars relitigation of the officers' negligence to impute that negligence to the City of Detroit on the basis of *respondeat superior.*

4. Plaintiff's pleading is insufficient to state a claim within the automobile exception to governmental immunity.

5. The trial court did not abuse its discretion in refusing to allow plaintiff's expert witness to testify as to police procedures.

6. Plaintiff was not denied a fair trial by defense counsel's closing argument. No manifest injustice occurred which would warrant reversal of the jury's verdict. The jury's verdict of no cause of action in favor of Gaines and Samuel is affirmed.

Reversed in part, affirmed in part and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — APPEAL — COURT RULES.

A motion for summary judgment based upon a failure to state a claim upon which relief can be granted under the court rules tests only the legal, not the factual, sufficiency of a party's pleadings; an appellate review of a summary judgment accepts as true all of the appealing party's factual allegations, as well as any reasonable inferences which may be drawn therefrom (GCR 1963, 117.2[1]).

2. COURTS — FEDERAL STATUTES — JUDICIAL CONSTRUCTION — FEDERAL PRECEDENT.

State courts are bound by the authoritative holdings of federal courts upon federal questions; if there is no decision by the United States Supreme Court and the federal courts disagree on the interpretation of a federal act, the Court of Appeals will adopt a view which appears most appropriate under the circumstances.

3. TORTS — LOCAL GOVERNMENTS — PERSONS — *RESPONDEAT SUPERIOR* — CIVIL RIGHTS — UNITED STATES CODE.

Local governments are "persons" for purposes of 42 USC 1983 actions; while a municipality cannot be held liable under § 1983 on a *respondeat superior* theory, the governmental body may

be sued directly under that statute where the action that is alleged to be unconstitutional or illegal implements or executes a policy or custom of that government (42 USC 1983).

4. TORTS — CIVIL RIGHTS — LOCAL GOVERNMENTS — POLICE — DELIBERATE INDIFFERENCE — UNITED STATES CODE.

Although a city cannot be held liable for the simple negligent training of its police force, a city's citizens do not have to endure a "pattern" of past police misconduct before they can sue the city under the federal statute governing civil actions for deprivation of rights; if a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a "deliberate indifference" to resulting violations of a citizen's constitutional rights; in such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations (42 USC 1983).

5. TORTS — POLICE DEPARTMENTS — GOVERNMENTAL IMMUNITY.

The operation of a police department is a governmental function such that claims of active negligence in hiring, training and supervising officers are defeated on the grounds of governmental immunity.

6. EVIDENCE — EXPERT TESTIMONY.

The decision to allow the introduction of expert opinion evidence is left to the trial court's discretion and will not be reversed absent an abuse of that discretion.

7. EVIDENCE — EXPERT TESTIMONY.

Three criteria must be satisfied for testimony to be admitted as expert testimony: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to expert analysis; and (3) the knowledge of the expert must be in a field where knowledge belongs more to experts than to the common man.

8. APPEAL — ARGUMENTS OF COUNSEL — STANDARD OF REVIEW — EXTREME PREJUDICE.

Appellate review of allegedly improper, but unobjected to, argument is limited to a determination of whether the statements were so prejudicial that even a curative instruction by the court could not undo the harm.

*Goodman, Eden, Millender & Bedrosian* (by

*George J. Bedrosian* and *Elizabeth Gleicher),* for plaintiff.

*Charles W. Anderson,* for defendant.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and D. F. WALSH, JJ.

N. J. KAUFMAN, J. Plaintiff, Alice Cook, as administratrix for the estate of Glover Cook, filed suit on August 1, 1978, against defendants, the City of Detroit and Detroit Police Officers James Duff, Gloria Gaines, and Alvin Samuel. Prior to the selection of the jury, the trial court granted summary judgment in favor of the City of Detroit. James Duff was voluntarily dismissed from the suit on motion of plaintiff. The jury reached a verdict of no cause of action in favor of the remaining defendants, Gloria Gaines and Alvin Samuel. On August 14, 1981, the trial court denied plaintiff's motion for a new trial. Plaintiff appeals as of right.

This lawsuit arose out of an incident which occurred on July 9, 1978. Police officers from the City of Detroit were called to the home of plaintiff and the decedent, Glover Cook, at approximately 6:22 p.m. When they arrived, the officers found Cook running between his home and the adjoining house, which was owned by a cousin. Cook was extremely violent. When the officers attempted to restrain him, Cook jumped several times through a glass door, pulling an officer through with him. Cook also wrestled with several officers, injuring them in the process. When Cook was finally restrained, he was placed in the back of Officers Gaines' and Samuel's patrol car. He attempted to kick out the windows of the vehicle. Cook was covered with blood but did not appear to the

officers to be severely injured. During the course of the officers' attempts to subdue him, they were informed that earlier in the day Cook had beaten his wife, plaintiff, and had locked his cousins' child in a freezer.

Pursuant to the police department's general orders regarding treatment of persons with mental problems, Officers Gaines and Samuel were instructed to transport Cook to Detroit General Hospital. Other hospitals in the past had refused to admit such persons unless the person was shot and there was no other option available. Because of rerouting due to closed freeway exits, the drive to the hospital took from 20 to 25 minutes. Upon arrival at the hospital, it was approximately 20 minutes before a stretcher could be located upon which to transport Cook inside. Cook was pronounced dead at 7:56 p.m. The cause of death was later determined to have been acute myocarditis, which had probably been aggravated by strenuous activity and loss of blood. The 80° weather on the date in question was probably also a contributing factor.

I

Did the trial court err in granting summary judgment in favor of the City of Detroit on the ground that plaintiff did not state an actionable claim under 42 USC 1983?

"A motion for summary judgment under GCR 1963, 117.2(1) tests only the legal, not the factual, sufficiency of the pleadings." *Attorney General v Michigan National Bank,* 110 Mich App 106, 116; 312 NW2d 405 (1981), quoting *Dillon v Tamminga #2,* 64 Mich App 305, 307-308; 236 NW2d 718 (1975). On review, we accept as true all of plain-

tiff's factual allegations as well as any reasonable inferences which may be drawn from the allegations.

In her complaint, plaintiff made the following allegations:

"5. That on or about July 9, 1978, the defendants, and each of them, while acting under color of law did violate the civil rights of plaintiff's decedent under 42 USC 1983 by depriving decedent of his life without due process.

\* \* \*

"9. That at all times herein mentioned, the defendant City of Detroit owed to plaintiff the following duties and obligations, among others:

"(a) To select, train and supervise the officers of its police department in such a manner and in such a way so as to avoid injury to others, and particularly to plaintiff's-decedent herein;

"(b) To avoid the employment and use of police officers it knew or should have known were dangerous, negligent and/or incompetent, so as to avoid injury to others, and particularly to plaintiff's-decedent herein;

"10. Notwithstanding the aforementioned duties and obligations, defendant City of Detroit did wilfully, wantonly and recklessly violate each and every one, among others."

42 USC 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively

to the District of Columbia shall be considered to be a statute of the District of Columbia."[1]

Even though a suit upon a federal statute is brought in a state court, the interpretation of that statute is a question of federal law. *Breish v Ring Screw Works,* 397 Mich 586; 248 NW2d 526 (1976). The courts of Michigan are bound by the pronouncements of the United States Supreme Court on issues of federal law arising in state courts. US Const, art VI, § 2. Additionally, Michigan courts adhere to the view that a state court is bound by the authoritative holdings of federal courts upon federal questions. If there is no decision by the United States Supreme Court and the federal courts disagree on the interpretation of a federal act, this Court will adopt a view which appears most appropriate under the circumstances. See *Schueler v Weintrob,* 360 Mich 621, 633-634; 105 NW2d 42 (1960).

In *Monell v Dep't of Social Services of the City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), the Supreme Court held that, notwithstanding governmental immunity, municipalities were "persons" for purposes of § 1983. However, a municipality could not be found liable under the statute by reason of *respondeat superior.* The municipality could only be held liable if a constitutional right was violated by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers". In addition, a municipality could be found liable if constitutional rights were violated by customs "so permanent and well settled as to

---

[1] As amended by Pub L No 96-170, § 1, 93 Stat 1284 (1979). The statute in effect at the time the cause of action occurred in the instant case made no reference to the District of Columbia.

constitute a 'custom or usage' with the force of law". 436 US 690-691.

Unfortunately, the Supreme Court in *Monell* failed to articulate the full extent of municipal liability under § 1983. However, several federal lower courts have attempted to do so. As explained in *Zmija v Baron,* 119 Mich App 524, 535; 326 NW2d 908 (1982):

"Numerous decisions subsequent to *Monell,* * * * have indicated that proof of mere negligence is insufficient to recover from a local governmental body under § 1983. The applicable standard has been variously described as deliberate indifference, *Leite v Providence,* 463 F Supp 585 (D RI, 1978), gross negligence, *Hild v Bruner,* 496 F Supp 93 (D NJ, 1980), recklessness, *Spriggs v Chicago,* 523 F Supp 138 (ND Ill, 1981)."[2]

The *Zmija* Court went on to adopt, in the context of a § 1983 claim against a city which was based on alleged inadequacies in the training and supervision of the city's police officers, the "deliberate indifference" standard of *Leite v Providence, supra.*[3] *Zmija,* p 535. In formulating this standard, the Court in *Leite v Providence, supra,* pp 590-591, had stated:

"Although a city cannot be held liable for simple negligent training of its police force, the city's citizens do not have to endure a 'pattern' of past police misconduct before they can sue the city under section 1983. If a municipality completely fails to train its police force,

[2] See *Hays v Jefferson County, Kentucky,* 668 F2d 869 (CA 6, 1982), *cert den* — US —; 103 S Ct 75; 74 L Ed 2d 73 (1982), and cases cited therein, for a discussion of allegations of mere negligence against a municipality under § 1983.

[3] The *Leite v Providence* 'deliberate indifference' standard has also been favorably relied upon by several federal courts. *Cf. Hays v Jefferson County, Kentucky, supra; Herrera v Valentine,* 653 F2d 1220 (CA 8, 1981); *Popow v City of Margate,* 476 F Supp 1237 (D NJ, 1979).

or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a 'deliberate indifference' to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations. In light of the responsibility, authority, and force that police normally wield, a municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force. If the plaintiff's injury results from the complete lack of training or grossly inadequate training of a police force, such an injury is not the result of mere negligence but the result of a deliberate and conscious indifference by the city. The training and supervising of these police officers must be so inadequate and the resulting misconduct so probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct."

We agree with the Court in *Zmija* that the "deliberate indifference" standard is the proper one to be applied to § 1983 actions under circumstances such as those involved herein. Applying that standard to plaintiff's allegation that the City of Detroit wilfully failed to properly select, train, and supervise its police officers, we conclude that plaintiff's complaint states a claim upon which relief can be granted. Therefore, we hold that plaintiff's § 1983 claim was improperly dismissed.

II

Did the trial court err in granting summary judgment in favor of the City of Detroit on the grounds of governmental immunity?

MCL 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

For plaintiff to state a claim against the City of Detroit, she must plead facts which show the activity alleged is not in the exercise or discharge of a governmental function. *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976).

It appears well settled that the operation of a police department is a governmental function, and that such department is immune from claims of active negligence in hiring, training, and supervising officers. *Berger v City of Berkley,* 87 Mich App 361; 275 NW2d 2 (1978), *lv den* 406 Mich 969 (1979); *Walkowski v Macomb County Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975); *Fiser v Ann Arbor,* 107 Mich App 367; 309 NW2d 552 (1981), *lv gtd* 412 Mich 915 (1982); *Trezzi v Detroit,* 120 Mich App 506; 328 NW2d 70 (1982). See also *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979). Therefore, a direct action against defendant City of Detroit, sounding in negligence, would be barred by the doctrine of governmental immunity.

Plaintiff claims, however, that the City of Detroit is liable for its employees' failure to exercise due care in apprehending, arresting, providing medical care for, and transporting plaintiff's decedent to the hospital. Presumably, this claim is premised upon the theory of *respondeat superior.* Although this argument raises some interesting questions regarding the scope of a governmental agency's liability for the negligent actions of its

employees, our resolution of plaintiff's remaining issues on appeal render a decision on this question unnecessary.

As is indicated in the remainder of this opinion, we find plaintiff's arguments in support of overturning the jury's verdict to be without merit. Consequently, since the jury in the suit against the individual police officers found that neither officer was negligent, collateral estoppel bars relitigation of the officers' negligence to impute that negligence to the City of Detroit on the basis of *respondeat superior.* See *Ellison v Wayne County General Hospital,* 100 Mich App 739; 300 NW2d 392 (1980), *rev'd in part on other grounds* 411 Mich 988 (1981). Remand for a trial on the theory of *respondeat superior* is, thus, inappropriate.[4]

Plaintiff also argues that she has stated a claim within the automobile exception to the governmental immunity statute, MCL 691.1405; MSA 3.996(105), which provides:

"Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948."

However, plaintiff's complaint does not even allege the existence, much less the negligent oper-

---

[4] We note that plaintiff's complaint alleges wilfull conduct on the part of Officers Gaines and Samuel. The allegation of wilfullness suggests that plaintiff was pleading an intentional tort that might be outside the scope of a governmental function. See *Lockaby, supra,* and *Zmija v Baron, supra,* p 534. Although this issue was raised before the trial court, it has not been raised on appeal. Therefore, the issue of whether plaintiff has alleged an intentional tort outside the scope of a police officer's employment has been abandoned. *McGruder v Michigan Consolidated Gas Co,* 113 Mich App 664; 318 NW2d 531 (1982).

ation, of a motor vehicle. Instead, plaintiff alleges only that the police were negligent in failing to immediately transport plaintiff's decedent to the hospital. This pleading is insufficient to state a claim within the automobile exception to governmental immunity.

## III

Did the trial court abuse its discretion in ruling inadmissible the testimony of plaintiff's expert witness?

The decision to allow the introduction of expert opinion evidence is left to the trial court's discretion. *Slocum v Ford Motor Co,* 111 Mich App 127; 314 NW2d 546 (1981), *lv den* 414 Mich 886 (1982); *People v Hernandez,* 84 Mich App 1; 269 NW2d 322 (1978), *lv den* 406 Mich 909 (1979). The decision of the trial court will not be reversed absent an abuse of that discretion. *Syrowik v Detroit,* 119 Mich App 343; 326 NW2d 507 (1982).

The admission of expert testimony is governed by MRE 702. The rule contains three prerequisites which must be satisfied before the witness may testify: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to expert analysis; and (3) the knowledge of the expert must be in a field where knowledge belongs more to experts than to the common man. *Syrowik,* p 348; *O'Dowd v Linehan,* 385 Mich 491; 189 NW2d 333 (1971).

In the instant case, plaintiff's proposed expert witness was a former Executive Deputy Police Chief for the City of Detroit, who was to testify concerning police procedures. Defense counsel objected to the witness's being permitted to testify, and the trial court sustained the objection on the

ground that no expert testimony on that subject was necessary. Following plaintiff's subsequent offer of proof, the trial judge upheld his earlier decision.

After examining the record, we conclude that the trial court's decision was proper. While there is no doubt that the witness could be considered an expert in police matters, plaintiff failed to show what facts were subject to expert analysis and how such testimony would aid the jury. There was no abuse of discretion in refusing to allow the expert testimony.

## IV

Was plaintiff denied a fair trial because of defense counsel's closing argument?

Plaintiff argues that a number of prejudicial comments by defense counsel in closing argument denied her a fair trial. This claim was the subject of a motion for a new trial. The trial court denied the motion, stating that there was no doubt that the unanimous verdict of the jurors was correct.

No objection was made at trial to any of the statements now claimed as error. The failure to object precludes review absent a showing of manifest injustice. *Eisbrenner v Stanley,* 106 Mich App 357; 308 NW2d 209 (1981), *lv den* 414 Mich 875 (1982). Stated otherwise, appellate review is limited to determining whether the statements were so prejudicial that even a curative instruction could not undo the harm. *Smith v E R Squibb & Sons, Inc,* 69 Mich App 375; 245 NW2d 52 (1976), *aff'd* 405 Mich 79 (1979). Even where the prejudice would not have been cured by an instruction, reversal is not necessarily warranted. In *Koepel v St Joseph Hospital,* 381 Mich 440, 443; 163 NW2d

222 (1968), the Supreme Court stated, "[i]f counsel * * * thinks * * * [the] defense has been hurt incurably by a prejudicial closing argument, his remedy of prompt motion for mistrial is open to him".

We have examined the allegedly prejudicial comments and do not find that reversal is necessary. Although we believe a few of these comments were irrelevant or went beyond the scope of this lawsuit, we do not believe there was a "studied purpose to prejudice the jury and divert the jurors' attention from the merits of the case". See *Kern v St Luke's Hospital Ass'n of Saginaw,* 404 Mich 339, 354; 273 NW2d 75 (1978), *reh den* 406 Mich 1103 (1979); *Wilson v Stilwill,* 411 Mich 587; 309 NW2d 898 (1981). Furthermore, plaintiff's attorney strongly responded to defense counsel's improper arguments on rebuttal and the trial court instructed the jury that the comments of the attorneys were not evidence. See *Eisbrenner v Stanley, supra.* In any event, we find no manifest injustice warranting reversal of the jury's verdict.

## CONCLUSION

We hold that the trial court improperly granted summary judgment in favor of defendant City of Detroit on plaintiff's § 1983 claim. Plaintiff's allegation that this statute was violated by the intentional acts of the City of Detroit was sufficient to state a claim upon which relief can be granted. The grant of summary judgment as to this claim is reversed, plaintiff's § 1983 claim against the City of Detroit is reinstated, and the case is remanded for a trial on the merits of the § 1983 claim only.

The trial court's grant of summary judgment in favor of the City of Detroit on the issue of governmental immunity is affirmed. The jury's verdict of

no cause of action in favor of defendants Gaines and Samuel is also affirmed.

Reversed in part and affirmed in part. Remanded for proceedings consistent with this opinion. No costs.